UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KATHLEEN G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION** <br><br> Case No. 2:20-cv-00163-DAO <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Kathleen G.[1] brought this action against Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the denial of her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. (*See* Opening Br. 1, 4, Doc. No. 23.) The Administrative Law Judge ("ALJ") determined Ms. G. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 26–37, Doc. Nos. 19–20.) After careful review of the record and the parties' briefs,[2] the court[3] REVERSES and REMANDS the Commissioner's decision.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to the Plaintiff by her first name and last initial only.

[2] The appeal will be determined on the basis of the written memoranda, pursuant to Civil Rule 7 1(f) of the Rules of Practice for the United States District Court for the District of Utah, as oral argument is unnecessary.

[3] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. No. 14.)

1

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration. This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it." *Id.* (citation omitted). The court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citation omitted). Moreover, the court may not substitute its judgment for that of the ALJ. *Langley*, 373 F.3d at 1118.

In addition, the court reviews whether the ALJ applied the correct legal standards. "The failure to apply the correct legal standard or to provide [the] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (internal quotation marks omitted).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform past relevant work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

PROCEDURAL HISTORY

Ms. G. filed an application for supplemental security income on September 29, 2016, alleging disability beginning on November 1, 2014. (Tr. 26.) On February 6, 2019, after a hearing, the ALJ found Ms. G. was not disabled. (*Id.* at 26–37.)

At step two of the sequential evaluation, the ALJ found Ms. G. had the severe impairments of degenerative disc disease, depressive disorder, anxiety disorder, personality disorder, post-traumatic stress disorder (PTSD), and substance abuse disorder. (*Id.* at 28.) At step three, the ALJ concluded Ms. G.'s impairments did not meet or equal an impairment listing. (*Id.* at 29.) In reaching this conclusion, the ALJ found Ms. G. had only "moderate" limitations in the broad areas of mental functioning set out in "paragraph B" of the mental impairment listings: "understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (*Id.* at 29–30.) At step four, the ALJ found Ms. G. had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with certain exceptions, including the following exceptions pertaining to mental impairments:

> She can understand, remember, and carry out simple, routine, and repetitive tasks; she has the ability to perform goal-oriented but not assembly-line paced work; she

can occasionally interact with co-workers, supervisors, and the general public; she can adapt to infrequent and routine changes in the work place; and she is limited to unskilled work.

(Tr. 30–31.) The ALJ stated his RFC assessment reflected the degree of limitation he found in the "paragraph B" mental functional analysis. (*Id.* at 30.) At step five, based on this RFC and the testimony of a vocational expert, the ALJ concluded Ms. G. could perform jobs existing in significant numbers in the national economy. (*Id.* at 36.) Therefore, the ALJ found Ms. G. was not disabled. (*Id.* at 37.)

The Appeals Council denied Ms. G.'s request for review, (Tr. 10–12), making the ALJ's decision final for purposes of judicial review.

DISCUSSION

Ms. G. contends the ALJ erred in failing to assign weight to opinion evidence regarding her mental impairments from an examining specialist, Dr. Cardinal, and a treating physician, Dr. Stringham. (Opening Br. 4, 15, Doc. No. 23.) Ms. G. also argues the ALJ improperly evaluated other evidence regarding her limitations from mental impairments, and that his findings regarding those limitations are unsupported by substantial evidence. (*Id.* at 5, 16–21.)

The Commissioner argues the ALJ was not required to assign weight to evidence from Dr. Cardinal or Dr. Stringham because they did not offer opinions regarding specific functional limitations. (Answer Br. 4–8, Doc. No. 24.)

**A. Evidence from Dr. Cardinal and Dr. Stringham**

The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); *see also* 20 C.F.R. § 416.927(c) (requiring the ALJ to evaluate every medical opinion and listing the factors to be considered in assigning weight to a medical opinion). However, an

5

ALJ's failure to expressly weigh opinion evidence may constitute harmless error where the ALJ makes an RFC determination which is consistent with the opinion or more favorable to the claimant. *Keyes-Zachary*, 695 F.3d at 1163.

1. Dr. Cardinal

Ms. G. underwent a psychological evaluation with Dr. Cardinal in November 2018, which included several days of testing. (Tr. 683–708.) Ms. G. reported difficulties related to executive functioning, memory, and attention, and significant deficits in short-term and long-term memory. (*Id.* at 699.) The first two testing sessions indicated malingering, but Ms. G. was "able to give her best effort" at a follow-up test session. (*Id.*) Dr. Cardinal indicated test results showed "varied presentation," but "[d]espite varied testing results, day to day [Ms. G.] clearly struggles with significant memory deficits." (*Id.*) In addition, Ms. G.'s "executive functioning and attention" revealed "significant struggles in aspects of attention." (*Id.*) Dr. Cardinal also found Ms. G.'s ongoing methadone use "caused significant deficits in inattention, processing, confusion, executive functioning, forgetfulness, and loss of pleasure and motivation." (*Id.* at 700.) Dr. Cardinal "[did] not believe [Ms. G.] [could] function independently without significant support." (*Id.* at 701.) She also diagnosed several conditions, including major depression disorder, generalized anxiety disorder, and PTSD. (*Id.*)

The ALJ found the record did not support the severity of Ms. G.'s allegations. (*Id.* at 34.) In support of this finding, he discussed Dr. Cardinal's evaluation, summarizing her observations of Ms. G.'s presentation and her diagnoses. (*Id.* at 33–34.) The ALJ noted "the validity tests showed significant support for malingering" and the final test showed "varied results." (*Id.* at 34.) However, he did not discuss Dr. Cardinal's findings regarding Ms. G.'s memory and attention deficits, and he did not expressly assign weight to Dr. Cardinal's evaluation. He also

did not mention Dr. Cardinal in the portion of his decision addressing medical opinion evidence. (*See id.* at 34–35 (discussing opinion evidence from other medical sources).)

The Commissioner argues the ALJ was not required to assign weight to Dr. Cardinal's evaluation because she did not opine on Ms. G.'s functional limitations, citing *Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (unpublished) and *Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) (unpublished). In *Fulton*, the Tenth Circuit held the ALJ did not err in failing to discuss two doctors' diagnoses in evaluating the claimant's RFC because "neither doctor gave an opinion about the functional limitations, if any, that these conditions imposed." 631 F. App'x at 501. In *Bales*, the Tenth Circuit held an ALJ did not err in neglecting to discuss a doctor's findings where the claimant failed to explain how those findings had any bearing on her functional limitations. 576 F. App'x at 797.

Unlike the medical professionals in those cases, Dr. Cardinal did make findings related to functional limitations caused by Ms. G.'s mental impairments, concluding Ms. G. had "significant" deficits in memory, attention, processing, and executive functioning. (Tr. 699–700.) These findings address limitations in understanding, remembering, or applying information, which is one of the broad areas of mental functioning the ALJ considered in determining Ms. G.'s RFC. *See* 20 C.F.R., Part 404, Subpart P, App. 1, section 12.00E. Moreover, Dr. Cardinal's findings of "significant" deficits in these areas support greater limitations than the "moderate" limitations the ALJ found in his analysis of Ms. G.'s mental functioning. Thus, Dr. Cardinal offered opinions regarding Ms. G.'s functional limitations which were relevant to her RFC, and the ALJ was required to consider and weigh those opinions.

Although the ALJ discussed Dr. Cardinal's evaluation, he did not mention her findings related to Ms. G.'s functional limitations and he did not assign weight to those findings in

assessing Ms. G.'s RFC. This omission prevents the court from determining whether the ALJ considered or weighed this opinion evidence as required. Because Dr. Cardinal's opinions regarding Ms. G.'s functional limitations support a more restrictive RFC than the ALJ found, the ALJ's error in failing to consider and assign weight to the opinions is not harmless. Accordingly, the case must be remanded for further consideration of Dr. Cardinal's functional-limitation findings.

    2. Dr. Stringham

Dr. Stringham was Ms. G.'s treating psychologist for three months in 2016. (Tr. 321–73.) In a letter to summarizing her findings, Dr. Stringham indicated Ms. G. had a "primary mental health diagnosis of [PTSD], chronic, with anxious distress," and she met the criteria for borderline personality disorder, alcohol use disorder, and opioid use disorder. (*Id.* at 321–22.) Dr. Stringham explained the criteria supporting the borderline personality disorder diagnosis: "pattern of unstable and intense interpersonal relationships"; "affective instability due to marked reactivity of mood"; and "inappropriate, intense anger or difficulty controlling anger," among other criteria. (*Id.* at 321.) She found it "evident Ms. [G.'s] unstable work history and self reported difficulty in working with coworkers or a close supervisor has been compromised by her personality disorder." (*Id.* at 322.) She indicated Ms. G. "demonstrates inability to trust others, bond in relationships, communicate effectively, and maintain health interpersonal relationships because of childhood abuse." (*Id.* at 344.) According to Dr. Stringham, Ms. G. was "repeatedly unable to carry out major obligations at work and home due to alcohol use" and "continued use despite persistent and repeated social and interpersonal problems caused and made worse by alcohol use." (*Id.*) Dr. Stringham's treatment notes also indicate Ms. G. experienced PTSD and anxiety around customers and staff at a job, had a hard time working

8

around others, (*id.* at 361–63), and had an extensive and ongoing history of domestic violence with her partner, (*id.* at 323–26, 365).

The ALJ mentioned Dr. Stringham only briefly in his decision. First, he noted Dr. Stringham's diagnoses of Ms. G. with PTSD, alcohol use disorder, and opioid use disorder. (*Id.* at 33.) Second, he "concur[red] with Dr. Stringham that [Ms. G.'s] substance abuse is secondary to her mental health condition." (*Id.* at 34.) However, the ALJ did not discuss the personality disorder diagnosis or Dr. Stringham's observations and findings regarding Ms. G.'s difficulties working with others and controlling anger. He also did not assign weight to Dr. Stringham's opinions or discuss them in the portion of the decision addressing medical opinion evidence.

Dr. Stringham's observations and findings regarding Ms. G.'s difficulties in working with others and controlling her anger relate to the broad areas of mental functioning which the ALJ considered in determining Ms. G.'s RFC, including interacting with others and adapting or managing oneself. *See* 20 C.F.R., Part 404, Subpart P, App. 1, section 12.00E. Her functional-limitation findings could support greater limitations than the ALJ found in determining Ms. G.'s RFC, but the ALJ did not address these findings in his decision. The ALJ's failure to discuss these findings leaves the court unable to determine whether the ALJ adequately considered this evidence in determining Ms. G.'s RFC. Thus, the ALJ erred in failing to expressly consider or assign weight to Dr. Stringham's functional-limitation findings. The case must be remanded for further consideration of Dr. Stringham's opinions.

**B. Other Evidence Regarding Mental Limitations**

Ms. G. argues the ALJ's assessment of her mental limitations was not supported by substantial evidence because he relied primarily on cursory observations from physical examinations rather than evidence from Dr. Cardinal and Dr. Stringham, who were mental health

9

specialists and offered opinions based on clinical evaluations, testing, and treatment. (Opening Br. 16–21, Doc. No. 23.) Ms. G. argues the evidence relied upon the by ALJ was overwhelmed by contrary evidence in the record. (*Id.*)

Because the ALJ erred in failing to consider and weigh the functional-limitations findings of Dr. Cardinal and Dr. Stringham, and the court is reversing on those grounds, the court need not address this issue. The evidence regarding Ms. G.'s mental limitations must be reconsidered and reweighed in light of the opinion evidence of Dr. Cardinal and Dr. Stringham.

## CONCLUSION

For the reasons set forth above, the court REVERSES the Commissioner's decision and REMANDS the case for further proceedings consistent with this order.

DATED this 28th day of June, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge